UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LESLIE J. MERRITT,<br><br>                   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                  Defendant. | Case No. 3:14-cv-05964-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

      Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matters should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

      On June 28, 2010, plaintiff filed an application for disability insurance benefits, and on June 29, 2010, she filed another application for SSI benefits, alleging in both applications she became disabled beginning January 31, 2007. *See* Dkt. 13, Administrative Record ("AR") 22. Both applications were denied upon initial administrative review on August 31, 2010, and on

ORDER - 1

reconsideration on December 29, 2010. *See id.* A hearing was held before an administrative law judge ("ALJ") on March 6, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 49-114.

In a decision dated April 18, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 22-41. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 8, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981, § 416.1481. On December 11, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on February 27, 2015. *See* Dkt. 13. The parties have completed their briefing and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to find her disabled pursuant to Rule 201.12 of the Medical-Vocational Guideline ("Grids") at step five of the Commissioner's sequential disability evaluation process[1], given her age and a residual functional capacity ("RFC") assessment more properly characterized as sedentary; and (2) in discounting her credibility. For the reasons set forth below, the Court agrees the ALJ erred in not applying the Grids based on a sedentary RFC, and thus in determining plaintiff to be not disabled. Also for the reasons set forth below, however, the Court further finds that while defendant's decision should be reversed on that basis, this matter should be remanded for further administrative proceedings.

---

[1] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is or is not disabled. *See* 20 C.F.R. § 404.1520, § 416.920. If at any particular step of that process, the claimant is determined to be disabled or not disabled, the determination is made at that step and the evaluation process ends. *See id.*

ORDER - 2

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

ORDER - 3

In terms of plaintiff's exertional limitations,[3] the ALJ found in relevant part that she had the RFC[4]:

> **. . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand/walk for two hours and sit for six hours in an eight-hour workday. She must be allowed to alternate between sitting and standing at will while remaining on task. . . .**

AR 27 (emphasis in original). The ALJ further found plaintiff had the following non-exertional limitations[5]:

> **. . . She can perform all postural activities occasionally except she can balance and stoop frequently. She can occasionally reach overhead bilaterally. She can frequently handle and finger. She can have no greater than frequent exposure to extreme cold. She can have no more that [sic] frequent exposure to vibrations and hazards such as moving machinery or unprotected heights. She can perform simple routine and repetitive tasks as defined by reasoning level 2. She can have no interaction with the public and no greater than occasional interaction with coworkers.**

*Id.* At step five in this case, the ALJ found in relevant part:

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the

---

> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

[3] Exertional limitations are those that only affect a claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b), § 416.969a(b).

[4] If a disability determination "cannot be made on the basis of medical factors alone at step three of" the sequential disability evaluation process, the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2. A claimant's RFC assessment is used at step four of that process to determine whether he or she can return to his or her past relevant work, and if necessary at step five thereof to determine whether the claimant can perform other jobs existing in significant numbers in the national economy. *See id.* A claimant's RFC is what he or she "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.*

[5] Non-exertional limitations are those that affect a claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1), § 416.969a(c)(1); *see also* SSR 83-14, 1983 WL 31254 ("Any functional or environmental job requirement which is not exertional is 'nonexertional.'").

ORDER - 4

> medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as an assembler of electrical accessories . . . The individual could also perform the duties of a solderer . . . Finally, the individual could perform the duties of a crabmeat processor . . . Each of these jobs exists in the national and regional economies in significant numbers. . . .
>
> . . .
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

AR 40. Plaintiff argues the ALJ erred in characterizing her RFC as light in determining whether to apply the Grids here at step five. The Court agrees.

As noted above, if a claimant is found to be incapable of returning to his or her past relevant work at step four of the sequential disability evaluation process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy that the claimant can do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d),

ORDER - 5

(e), § 416.920(d), (e). The ALJ may do this through the testimony of a vocational expert or by reference to the Grids. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. The Grids reflect the claimant's maximum sustained *exertional* work capacity. *See* SSR 83-10, 1983 WL 31251, at *2-*3 ("exertional capabilities" are used "to identify maximum sustained work capability"; "only impairment-caused limitations considered in each rule are exertional limitations").

If a claimant thus "has significant non-exertional impairments," then reliance on the Grids is not appropriate. *Ostenbrock*, 240 F.3d at 1162; *see also Tackett*, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). Accordingly, proper use of the Grids depends in each case on the nature and extent of the claimant's impairments and limitations:

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment. In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded. However, where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question; other testimony is required. In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. If so, then benefits must be awarded. However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required. In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

*Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (internal citations and footnotes omitted); *see also Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998) (because claimant's limitations included non-exertional limitations, ALJ could not "rely exclusively on the grids,"

ORDER - 6

and thus vocational expert testimony was required); SSR 83-14, 1983 WL 31254, at *1, *3 (no rule "applies to direct conclusion of 'Disabled' or 'Not disabled'" under Grids where there exists non-exertional limitation, rather that rule is used "as a framework for decisionmaking"; where disability cannot be found "based on strength limitations alone, the rule which corresponds to the person's vocational profile and maximum sustained exertional work capability . . . will be the starting point to evaluate what the person can do functionally").

For the Grids to apply, furthermore, the claimant's "remaining exertional capabilities must be sufficient to allow performance of substantially all (nearly all) of the primary strength activities defining the particular level of exertion (i.e., sedentary, light, or medium)." SSR 83-10, 1983 WL 31251, at *2; *see also* SSR 83-12, 1983 WL 31253, at *1 (Grids direct conclusion of "disabled" or "not disabled" where individual's exertional RFC coincides or does not coincide respectively with "exertional criteria" of specific rule). In some cases, there may be an additional exertional or non-exertional limitation that has "very little effect on the range of work remaining that an individual can perform." SSR 83-14, 1983 WL 31254, at *3. That is, the restriction may be "so slight that it would clearly have little effect on the occupational base," that the individual "comes very close to meeting a table rule which directs a conclusion of 'Not disabled.'" *Id.*; SSR 83-12, 1983 WL 31253, at *2.

On the other hand, the additional limitation "may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of 'Disabled.'" SSR 83-14, 1983 WL 31254, at *3. "In still other instances, the restrictions of the occupational base" imposed by the additional limitation "will be less obvious." SSR 83-12, 1983 WL 31253, at *2. "Where the extent of erosion of the occupational base is not clear," the ALJ "will need to consult a vocational resource," and even in "what appear to be 'obvious' types of

ORDER - 7

cases," such a resource "may be helpful." *Id.*; SSR 83-14, 1983 WL 31254, at *4. Further, "[i]f the exertional level falls between two rules which direct opposite conclusions, i.e., 'Not disabled' at the higher exertional level and 'Disabled' at the lower exertional level," the ALJ is directed to consider the following:

> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. . . .

SSR 83-12, 1983 WL 31253, at *2-*3 (noting further that vocational specialist assistance "is advisable for [the last] types of cases").

Plaintiff argues that since the major difference between a light exertional work capacity and a sedentary exertional work capacity is the amount of time an individual is able to stand or walk, rules in the Grids that are based on the lower, sedentary exertional work capacity should have been applied by the ALJ. The Court agrees. The Commissioner's own rulings recognize "[t]he major difference between sedentary and light work is that most light jobs-- particularly those at the unskilled level of complexity--require a person to be standing or walking most of the workday." SSR 83-14, 1983 WL 31254, at *4. In addition, "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, *5; *see also* 20 C.F.R. § 404.1567(a), § 416.967(a).

ORDER - 8

A light exertional work capacity, on the other hand, requires as noted above that a person "be standing or walking most of the workday." SSR 83-14, 1983 WL 31254, at *4. Indeed, to be able to perform the full range of light work, a person must stand or walk, "off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. Again, the Commissioner's rulings recognize the importance of this difference between the two exertional work capacities, expressly pointing out that "relatively few light jobs . . . are performed primarily in a seated position." SSR 83-12, 1983 WL 31253, at *4.

The Court thus finds the limitation to standing /walking for two hours and sitting for six hours in an eight-hour workday, better coincides with the sedentary exertional work level.  The requirement that plaintiff be allowed to sit and stand at will would appear to even further erode the available occupational base in this case. *See id.* ("Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work."). It is true that the ALJ found that except for this and the other, non-exertional limitations noted above, plaintiff was capable of performing light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and which is thus greater than that contemplated by a limitation to the sedentary work. *Id.*; *see also* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."), § 416.967(a).

While the Commissioner's rulings do recognize this is "[a]nother important difference" between sedentary and light work, again as discussed above those rulings also deem the ability to stand or walk for "most of the workday" to be "[t]he major difference" between the two. SSR 83-

ORDER - 9

14, 1983 WL 31254, at *4. Thus, although the heavier lifting and carrying capacity imposed by the ALJ indicates a greater functional capacity on plaintiff's part than a limitation to the lower, sedentary exertional level, that capacity clearly is sufficiently significantly reduced below that of the light exertional level to indicate the sedentary exertional level is the most appropriate one to use here. The Commissioner's own policy guidelines, as set forth in the Program Operations Manual System ("POMS"), would appear to support this view as well. The POMS "is a primary source of information used by Social Security employees to process claims for Social Security benefits" that "adjudicators at all levels of administrative review" must follow. SSR 13-2p, 2013 WL 621536, at *15; https://secure.ssa.gov/apps10/.[6]

In light of the above, plaintiff argues the ALJ was required to follow the policy guidelines set forth in POMS DI 25025.015, which she asserts offers the following example of using a Grid rule as a framework when a claimant's exertional capacity falls between two rules:

> **EXAMPLE:** A 50-year-old claimant with a high school education and unskilled past relevant work *has an RFC for standing/walking 2 hours of an 8-hour day and sitting approximately 6 hours of an 8-hour day*. He is able to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently. This RFC falls between rule 201.12, which has a decision of disabled, and 202.13, which has a decision of not disabled. *In this case, use rule 201.12 as a framework for a decision of disabled* because the definitions in DI 25001.001 (Medical-Vocational Quick Reference Guide) indicate light work usually requires walking or standing for approximately 6 hours of an 8-hour day. *Since the claimant can only walk or stand for 2 hours, he has a significantly reduced capacity to perform light work and a sedentary medical-vocational rule applies as a framework for a determination.*

Dkt. 15, p. 4 (emphasis added by plaintiff). Thus, according to this example, a claimant who is 50 years old, has a high school education and unskilled past work, and who has the same sitting,

---

[6] "The public version of POMS" may be accessed through the Social Security Administration's website. *Id.* That version "is identical to the version used by Social Security employees except that it does not include internal data entry and sensitive content instructions." *Id.* In addition, although not having "the force of law," the Ninth Circuit has recognized the POMS as being "persuasive authority." *Warre v. Commissioner of Social Security Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

ORDER - 10

standing, walking, lifting and carrying limitations as plaintiff, should be found disabled based on Grid Rule 201.12, using that rule as a framework for making a determination. Plaintiff asserts the ALJ therefore was required to find her disabled based on that Grid rule.

It seems though that the above example is no longer part of POMS DI 25025.015. *See* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425025015. However, defendant does not argue that example was not part of the POMS at the time the ALJ issued his decision, and therefore that the ALJ was not therefore required to follow it. Indeed, the Social Security Administration's website indicates a revision to that particular policy guideline occurred on March 27, 2015, that may very well have resulted in the example's subsequent removal. *See id*. Even if the current version of POMS DI 25025.015 is used, though, the ALJ still would have been required to apply the lower, sedentary exertional rules rather than the higher, light exertional ones:

> **D. Exertional capacity falls between rules with different conclusions**
>
> Determining whether a claimant is disabled is a more difficult judgment when his or her exertional capacity falls in the middle of two rules and the rules direct opposite conclusions. In this situation apply the:
>
> - higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or
> - lower-numbered rule and find the claimant disabled if you conclude the claimant has a significantly reduced capacity for the higher level of exertion.

*Id.* As discussed above, even though the ALJ's RFC assessment suggests an exertional level that is higher than merely sedentary – given the greater lifting and carrying limitations – the capacity to perform at the light exertional level is clearly significantly reduced, indeed to the extent that it coincides much more closely with the sedentary level.

Defendant argues that the Grids may be used only if they "*completely and accurately* represent a claimant's limitations," and that "when a claimant's exertional limitations fall

ORDER - 11

between two Grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person with claimant's profile could perform substantial gainful work in the economy." *Tackett*, 180 F.3d at 1101 (emphasis in original); *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). But as discussed above, the Commissioner's own rulings and policy guidelines recognize that where a claimant's exertional capacity is either significantly or only slightly reduced such that it essentially coincides with the lower or higher rule respectively, that rule should be applied and a determination made on that basis. Such is the case here. That is, given, also as discussed above, the significant reduction in the ability to stand/walk the ALJ found plaintiff had – and the fact that the ability to stand/walk is the major difference between sedentary and light work – the ALJ should have consulted the lower, sedentary rules first before relying on the vocational expert's testimony. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006); *Cooper*, 880 F.2d at 1155.

The Court disagrees with plaintiff, however, that given her age as of the time she turned 50 years old, education, and previous work experience, along with a maximum sustained work capability of sedentary, she should have been found disabled pursuant to Grid Rule 201.12. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12. This is because that Grid rule contemplates an individual with either no prior work experience or an unskilled work background. *See id.* The record, though, indicates plaintiff has a semiskilled work background. *See* AR 39, 98; SSR 00-4p, 2000 WL 1898704, at *3. That suggests that instead of Grid Rules 201.12 or 201.13, Grid Rules 201.14, 201.15 or 201.16 are the more appropriate ones to consider. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14, § 201.15, § 201.16. But given that the ALJ made no finding as to the transferability of job skills – other than that the issue of transferability was not material in light of the fact that the two Grid rules he considered both directed a finding of "not disabled" (*see* AR

ORDER - 12

39) – it is unclear whether a determination of "disabled" under Rule 201.14 or of "not disabled" under Rule 201.15 or Rule 201.16 is more appropriate (*see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14, § 201.15, § 201.16). That issue remains to be resolved on remand.

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation*." Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because the issue of whether plaintiff is disabled under the Grids remains, remand for further consideration thereof is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the

ORDER - 13

findings contained herein.

DATED this 2nd day of July, 2015.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

ORDER - 14